Battle, J.
 

 The bill was filed by the Executors of Henry Williams, against his legatees, stating that difficulties had been suggested in the construction of his will in certain particulars, calling upon the court for its advice and direction. In exam-amining the will with a view to its construction, it will be most convenient to consider the questions l’aisedinthe reverse order from that in which they are presented in pleadings. The coxxnselfor the defendants, Dolvin and wife, contends that the will is void for uncertainty, except so much thereof as relates to the legacy to the wife of $100, the sale of the testator’s property, the payment of his debts, and the appointment of his executors. But if that be not so, he then insists that they are entitled to an equal share of the estate, in addition to the legacy of one hundred dollars. In Owen v. Owen Busb. Eq. Rep. 121, we said that “ all admit that the fundamental rule in the construction of wills is to ascertain the intention of the maker ; and for that purpose, all the parts of the will are to be taken into view, and effect is to be given as far as possible to every clause. What is wanting or obscure in one section or paragraph, is to be supplied by what is cleai’ly expressed in another, so as to give to the whole instrument, a uniform, consistent interpretation throughout all its parts.” Taking this rule for our guide, we have no hesitation in declaring the objection of uncertainty to be unfounded. The counsel says, that excepting the legacy to Mrs. Dolvin, nothing is given to any person whatever: that the testator merely names certain of his children and grandchildren, without giving them any thing. ' That might perhaps be so, were the clause referred to, taken by itself, but it is to be considered in reference to the
 
 *237
 
 other parts of the will; and talcing it in connection with the clause immediately preceding, it shows that the whole estate, when converted into money, is directed to he divided among his “ heirs ” in certain specified proportions which are subjoined. The claim for Mrs. Dolvin of a share of the estate, in addition to the legacy of $100, is clearly inadmissable. The sentence in which the legacy is given is complete. There is no apparent omission in it, as there is in the will of James Simms, which we were called upon to construe’in the case of Dew v. Babnes, decided at the present term, (ante 149.) ’ We might as well supply any other words as those which the counsel insists, ought to be inserted.
 

 ’ The main question in the case is whether the testator’s four grandchildren, the children of his deceased son, Simon Williams, are to take
 
 par capita,
 
 with his children, or
 
 per stirpes
 
 as representing their deceased father. The rule is firmly settled that they are to take
 
 per capita
 
 unless there he something in the will to show that, upon a just construction of it, the testator’s intention is apparent that they should take otherwise —Ward v. Stowe, 2 Dev. Eq. 509 — Martin v. Gould, Ibid. 305 — Spivey v. Spivey, 2 Ired. Eq. 100 — Harris v. Philpot, 6 Ired. Eq. 324 — Henderson v. Womack, 6 Ired. Eq. 437. The general rule was adhered to in Ward v. Stowe, and Harris v. Philpot; in the first of which the question was frequently argued by counsel and the whole subject fully considered in an elaborated opinion of the court in which all the English cases were reviewed. The other cases of Martin v. Gould, Spivey v. Spivey, and Henderson v. Womack, were held to be exceptions to the admitted general rule upon the special indications of intention apparent in the wills respectively, which, those cases brought before the Court. This narrows the question before us, to the inquiry, whether any expression is to be found in the present will to exclude the applic ition of the general rale. It must be admitted, that there is not, unless it be in the first clause of the will, which
 
 *238
 
 is as follows: “ I request that after my death, my negroes, land, &c., be sold, and after my honest debts be paid, the balance be divided among my heirs, as my will directs.” It is contended by those who are opposed to the application of the general rule, that the word “heirs,” means children, and that by dividing his property among his children, the testator intended to assign to each living child an equal share except as otherwise directed, and then to give the shares of his deceased children to their children respectively. It may be that the testator by the term “ heirs,” meant “ children,” but it is more probable that he meant his issue, for whom he felt bound to provide, and therefore, included his grand-children, whose fathers and mothers were dead. Whether he meant the one or the other, we think the construction contended for, cannot be admitted. The testator shows that he knew how to give the share of a child to his or her children whether such child were living or dead. For instance, he gives to his grand-son, Henry Carter, the share of his mother who was dead, and to the four children of Rebecca Hopkins, the share of their mother, who was living. Why, if he intended to make a like gift to the children of his deceased son, Simon Williams, did he not express himself in similar terms
 
 %
 
 Why name Simon Williams’s children
 
 seriatim
 
 at all, unless he intended them to takey><?r
 
 earpita
 
 with the other named legatees, who were to have a share ? We think the intent to be collected from the will itself, is rather for, than against, the admissibility of the general rule, and it must prevail. A decree may be drawn in ’ accordance with this opinion.